IN THE COURT OF COMMON PLEAS
CLERMONT COUNTY, OHIO

FILED
2022 MAY 26 PH 3: 33
BARBARA A. WIEDENBEIN
CLERK OF COMMON PLEAS
CLERMONT COUNTY, OH

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC,<br>4289 Ivy Pointe Boulevard<br>Cincinnati, OH 45245<br><br>**Plaintiff,**<br><br>v.<br><br>TRAFFIC TECH, INC.<br>111 E. Wacker Drive, Suite 2500<br>Chicago, IL 60601<br><br>and<br><br>JEFFREY BURDICK<br>4003 S. West Shore Blvd., Apt. 1905,<br>Tampa, FL 33611<br><br><br>**Defendants.** | Case No.: _____<br><br>Judge: _____2022 CVH 00482 JUDGE BROCK_____<br><br><br><br><br><br>**VERIFIED COMPLAINT FOR<br>TEMPORARY RESTRAINING ORDER,<br>PRELIMINARY INJUNCTION,<br>PERMANENT INJUNCTION, AND OTHER<br>RELIEF** |

For its Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief against Defendants Traffic Tech, Inc. ("Traffic Tech"), and Jeffrey Burdick ("Burdick"), Plaintiff Total Quality Logistics, LLC ("TQL") states as follows:

### Introduction

1. This case arises from the breach of certain, contractual obligations contained in signed and enforceable agreements between TQL and Burdick and TQL and Traffic Tech, the misappropriation of confidential and trade secret information, and Traffic Tech's tortious interference with Burdick and TQL's contract.

## Parties, Jurisdiction, and Venue

2. TQL is an Ohio limited liability company with its principal place of business located in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers across the continental United States.

3. Traffic Tech is an Illinois corporation with its principal place of business located in Chicago, Illinois. Traffic Tech is a direct competitor of TQL.

4. Burdick is a Florida resident. He was previously a TQL employee and is now an employee of Traffic Tech.

5. Jurisdiction and venue are appropriate because Burdick and Traffic Tech each contractually agreed to venue and jurisdiction in this Court, and all improper acts and conduct were purposely directed against an Ohio company located in Clermont County.

## Facts

**A. The Nature of TQL's Business and the Logistics Industry**

6. TQL is a national leader in the logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the continental United States.

7. TQL's customers consist of companies that want to ship goods from one location to another. These customers include companies that need to ship their own goods. But many of TQL's customers also include other freight brokers that have already agreed to ship goods on behalf of another customer, but need assistance in finding a carrier to fulfill the shipment.

8. TQL does not own, operate, or lease any of its own trucks. Nor does it employ any drivers to haul freight. Rather, TQL engages and coordinates independent carriers that are able and willing to haul freight at the times and places required by TQL's customers.

9. The third-party logistics industry (and the freight-shipping industry at large) is extremely competitive. Among other things, relationships with customers, carriers, and other brokers are essential to sustained success within the industry. TQL spends a great deal of time, money, and other resources developing relationships with new customers and strengthening relationships with existing ones. Further, TQL has made substantial investments to develop and protect the secrecy of its proprietary systems, processes, and procedures it uses to manage its operations and to succeed in this hyper-competitive industry.

10. Further, TQL protects its trade secrets and confidential information by conditioning employee access upon use of constantly changing passwords and requiring all employees to sign agreements that include confidentiality and restrictive covenant provisions. Likewise, TQL's systems implement internal controls that prevent employees from downloading or printing certain information.

**B.     Burdick's Employment with TQL**

11. Burdick worked at TQL from December 2, 2019 to March 21, 2022.

12. Before commencing employment with TQL, he was required to sign, and did sign, a Confidentiality Agreement and Restrictive Covenant (the "Agreement"), a true and accurate copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference.

13. In the Agreement, Burdick agreed, among other things, for a period of one year after his employment ended, not to work for or associate with any TQL competitor, solicit any TQL customer or carrier with which TQL had a relationship, or solicit or recruit other TQL employees. Burdick also agreed to keep confidential and not disclose or use any confidential, trade secret, or proprietary information to which he was exposed while working for TQL. Finally,

Burdick contractually agreed that TQL would be entitled to an award of attorneys' fees if it had to bring an action against Burdick to enforce the terms of the Agreement.

14. While at TQL, Burdick held successively the positions of Logistics Account Executive Trainee, Logistics Account Executive, and Saturday Group Leader.

15. TQL provided Burdick, over the span of his employment, with extensive training on topics that included its services, pricing structure, sales strategies, customers, and general operations. Burdick developed close relationships with and an intimate knowledge of certain TQL customers, and had access to TQL's trade secrets and confidential information. He was a primary point of contact with TQL customers with whom he interacted.

16. TQL recently learned that Burdick has been working for Traffic Tech as an Account Manager, a position that is the same as or similar to his position at TQL, and that such employment began prior to one year after his employment with TQL ended. Upon information and belief, Burdick has been improperly soliciting the customers he serviced while at TQL. Given that he has assumed a similar, if not the same, role that he had while working with TQL, it is inevitable that this unlawful conduct will continue.

**C.     Traffic Tech's Contract with TQL**

17. This is not the first time that Traffic Tech has hired a TQL employee still subject to a restrictive covenant. In 2016, TQL brought suit against a former employee and Traffic Tech, where the former employee had taken a position in violation of his restrictive covenant. Traffic Tech was made aware of TQL's non-compete agreement with its employees in that suit. The case ultimately was resolved by a settlement agreement. Traffic Tech agreed therein that it "shall not knowingly solicit, hire, or employ any current or former TQL employee during the duration of any non-compete agreement the employee has with TQL." For any current or former TQL employee

inadvertently hired by the Traffic Tech in violation of a TQL non-compete, Traffic Tech agreed to terminate said employee with one day of notification by TQL.[1]

18. In 2021, despite the Settlement Agreement, Traffic Tech hired another TQL employee subject to a restrictive covenant and continues to employ him. Moreover, Traffic Tech encouraged that employee to solicit and do significant business with TQL customers known to him through employment at TQL.

19. Traffic Tech is aware that Burdick is subject to the Agreement, but hired him and continues to employ him anyway, in violation of the Settlement Agreement, inclusive of Sections 6 and 8(A).

## COUNT ONE: BREACH OF CONTRACT
**(Asserted against Burdick)**

20. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

21. The Agreement is a valid and legally enforceable contract that TQL and Burdick entered into freely and without duress.

22. In exchange for his commitment to be bound by the Agreement, Burdick received adequate and sufficient consideration, including, without limitation, ongoing employment, extensive training, and continued access to TQL's confidential information to assist with his professional development.

23. The Agreement in Section 9 provides for a one-year period following employment during which Burdick is prohibited from accepting employment or affiliation or association with

---

[1] Paragraph 7 of the settlement agreement, titled "Confidentiality" governs the confidentiality of the settlement agreement as a whole, but provides for an exception for when "disclosure is necessary for implementation of the Agreement." To respect the confidentiality of any terms of the settlement agreement not necessary for implementation, TQL will seek to file the document under seal as Exhibit B. Traffic Tech already has a copy of the settlement agreement.

5

a TQL competitor, of which Traffic Tech is one, and from soliciting on a competitor's behalf TQL's customers. The Agreement further provides that customer-related information, including customer lists and contact and preference information, is confidential and may not be used for the benefit of anyone other than TQL.

24. Burdick has breached and continues to breach the Agreement by virtue of the fact that he has accepted and maintained employment in the same or similar position with one of TQL's direct competitors, utilized confidential information, upon information and belief solicited its customers, and/or otherwise competed with TQL, prior to the expiration of the one-year restrictive covenant.

25. Unless immediately restrained and enjoined, Burdick will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

26. Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to Section 11(a) of the Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Burdick from any further violation of the Agreement.

27. In the alternative and/or addition to such relief, as a direct and proximate result of Burdick's breach and continuing breach of the Agreement, TQL has suffered monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

28. Pursuant to Section 11(b) of the Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Burdick's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

## COUNT TWO: MISAPPROPRIATION OF TRADE SECRETS
**(Asserted against Burdick and Traffic Tech)**

29. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

30. The confidential TQL information identified above, in particular that related to TQL's customers, financial information, and training, are TQL's trade secrets subject to protection under the Ohio Uniform Trade Secrets Act, R.C. 1333.61, *et seq.*

31. Burdick also acknowledged in Section 4 of the Agreement that the confidential TQL information identified above, *inter alia*, constitutes TQL's trade secrets.

32. This information derives independent economic value by not being readily known or ascertainable through proper means by other persons who can obtain economic value from its disclosure or use—namely, TQL's competitors.

33. TQL has spent much time over many years and invested significant sums, in terms of both financial and human resources, to develop and maintain this information.

34. This information is the subject of reasonable efforts by TQL to maintain its secrecy, including conditioning employee access it is system upon use of constantly changing passwords, restricting employees from downloading or printing certain information, and requiring all employees to agree sign an agreement containing confidentiality and restrictive covenant provisions similar to those included in the Agreement.

35. Burdick's misconduct and wrongful taking of this information constitutes misappropriation under the Ohio Uniform Trade Secrets Act because he has used, threatened to use, and/or inevitably will use this information as an Account Manager for Traffic Tech.

36. At the time Burdick and Traffic Tech misappropriated TQL's trade secrets, they knew they acquired those trade secrets by improper means, and had clear knowledge that they only

had access to the protected information under circumstances giving rise to a duty maintain the information's secrecy.

37. As a result of Burdick's and Traffic Tech's misappropriation of trade secrets, TQL has suffered and will continue to suffer damages, loss of competitive position, and irreparable harm as a result of Burdick's use of the information to directly compete with TQL.

### COUNT THREE: BREACH OF CONTRACT
(Asserted against Traffic Tech)

38. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

39. The Settlement Agreement is a valid and legally enforceable contract that TQL and Traffic Tech entered into freely and without duress.

40. In exchange for its commitment to be bound by the Agreement, Traffic Tech received adequate and sufficient consideration, as defined in the Settlement Agreement.

41. Through its employment of Burdick, Traffic Tech has breached and continues to breach the Settlement Agreement, including Sections 6 and 8(A).

42. Unless immediately restrained and enjoined, Traffic Tech will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

43. Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, and pursuant to the parties' agreement in Section 12 of the Settlement Agreement, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Traffic Tech from any further violation of the Settlement Agreement.

44. In the alternative and/or addition to such relief, as a direct and proximate result of Traffic Tech's breach and continuing breach of the Settlement Agreement, TQL has suffered

monetary damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

45. Pursuant to Sections 12 of the Settlement Agreement, TQL is also entitled independently to recover the attorney's fees expended as a result of Traffic Tech's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

### COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACT
### (Asserted Against Traffic Tech)

46. TQL restates and realleges the preceding paragraphs of this Complaint by reference.

47. Through the Agreement, TQL has a contractual relationship with Burdick.

48. Traffic Tech is aware of this contractual relationship.

49. Despite this knowledge, Traffic Tech has knowingly and intentionally interfered with this contractual relationship, and continues to do so, by employing Burdick, in violation of the Agreement.

50. Traffic Tech has tortiously, willfully, and maliciously ignored the contractual obligations that Burdick owes to TQL, without any justifiable excuse.

51. Unless immediately restrained and enjoined, this interference will cause harm, damage, and injury to TQL for which it has no adequate remedy at law.

52. Therefore, consistent with this Verified Complaint and the contemporaneously filed Motion for a Temporary Restraining Order, TQL prays that the Court issue immediate, preliminary, and permanent injunctive relief enjoining Traffic Tech from any further interference with the Agreement.

53. In addition, as a proximate result of Traffic Tech's conduct, TQL has suffered, and will continue to suffer, damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum of this Court.

54. Because Traffic Tech's conduct has been intentional, willful, and malicious, TQL is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, TQL respectfully requests that this Court issue a judgment as follows:

a) Issue immediate, preliminary, and permanent injunctive relief prohibiting Burdick from any further violation of his Agreement with TQL, including employment or association with a TQL competitor, of which Traffic Tech is one, solicitation of TQL's customers, and use and disclosure of TQL's confidential information, plus attorney's fees as provided in the Agreement;

b) Issue immediate, preliminary, and permanent injunctive relief prohibiting Traffic Tech from any further violation of the Settlement Agreement with TQL, including continued employment of Burdick, plus attorney's fees as provided in the Settlement Agreement;

c) Issue immediate, preliminary, and permanent injunctive relief prohibiting Burdick and Traffic Tech from further misappropriation of TQL's trade secrets;

d) Issue immediate, preliminary, and permanent injunctive relief prohibiting Traffic Tech from further tortiously interfering with TQL's contractual relationship with Burdick, by knowingly employing him in violation of the Agreement;

e) Award compensatory damages in favor of TQL in an amount to be determined at trial in excess of $25,000.00;

f)      Award punitive damages in favor of TQL in an amount to be determined at trial;

g)      Award attorney's fees as provided in the Agreement, Settlement Agreement, or as otherwise provided by law;

h)      Court costs, prejudgment interest, and post-judgment interest; and

i)      Any other relief that this Court deems just and proper.

Respectfully Submitted,

*/s/ Matthew J. Wiles*
Matthew J. Wiles (0075455)
Kelli J. Amador (0095550)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Telephone: 614-628-6880
Facsimile: 614-628-6890
matthew.wiles@dinsmore.com
kelli.amador@dinsmore.com

***Attorney for Plaintiff Total Quality Logistics, LLC***

## VERIFICATION OF COMPLAINT

STATE OF OHIO )

COUNTY OF CLERMONT )

I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Ohio Rules of Civil Procedure. I have read the foregoing Complaint and have personal knowledge of the matters and contents thereof. The same are true and accurate to my knowledge, apart from matters therein stated to be alleged on information and belief, and as to those matters I have been informed and believe them to be true and accurate.

_____
Marc Bostwick

Subscribed and sworn by Marc Bostwick before me, a Notary Public, on this 26th day of May, 2022.

_____
Notary Public

Lindsay Sadlowski, Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration Date
Sec 147.03 RC

12